This is Javitz v. County of Luzerne. Good afternoon, Ms. Davis. Good afternoon. Two minutes for rebuttal, your honor. Sure. I'm also sharing my time with the ACLU. Your honors, I am the appellant plaintiff in this case. I am an HR professional. I am an attorney licensed in the Commonwealth of Pennsylvania, the District of Columbia, and I am also a citizen and a victim. I am a victim of a crime. I am a victim of multiple crimes committed against me in my role as the HR director for Luzerne County. As far as the facts are concerned and what's relevant here, in my role as the HR director, it is my responsibility to investigate actions that came before me from management and employee discipline issues. As part of those responsibilities, I would meet with the union as part of the investigation. I would invite them into the investigations. Unbeknownst to me, I was being wiretapped during those investigations by the union president. It became clear to me that I was being wiretapped when the union filed an un-for-labor practice charge with the Pennsylvania Labor Relations Board. I was given a copy of that and attached to the charge were transcripts of dialogue, testimony, three, four pages, five, six, seven pages of conversations that took place in these meetings that I had over employee discipline. Did anyone ever acknowledge that they did that by electronic device? They had, there were cell phones on the table. Which you were aware of? I saw the cell phone. I did know it was not being activated. I did not know it was being activated. I did not have a phone like that. Maybe somebody was a good stenographer in that way. Well, that would be magic because nobody was taking notes like that, Your Honor. No one was taking notes to be able to produce those transcripts. What's unfortunate here is the record before you does not contain the amended complaint. Attached to the complaint in that case were the transcripts of those. If you had seen those transcripts, you would also look at them and conclude as an individual, as a judge, as an attorney, that they could not have been produced without the opportunity of a recording device. You would also have to know who the people I was dealing with, the mentality of those people, the capabilities of those people. Okay. Well, let's focus on the First Amendment. Okay. I understand you feel that you were wronged, but let's focus on the First Amendment claim. Okay. When I became aware of this, I brought it to the attention of my superior, the division head of administrative services. He agreed with me that the transcripts could not exist unless there was a wiretap. Brought it to the attention of the solicitor, who was not my superior. He, too, agreed. Neither of them, however, did anything about it. So as a victim of that, I'm aware that a violation of the wiretap statute is a third-degree felony in Pennsylvania. So did you approach the district attorney as a citizen? Yes, I did. I approached the district attorney as a citizen. I contacted the district attorney. If you look at the lower court decision, it looks as if Mr. Parsnick made that contact. He did not. There are statements that need to be corrected in the record, in the decision of the district court. You told Mr. Parsnick about this. You reported it to him, did you not? Yes, I did. And he did nothing except agree with me that they were He went to a meeting with you with the district attorney. I invited him to that meeting and he went to the meeting. Who spoke and who related the story? He did it to control what was being said in the meeting, Your Honor. You need to understand. You had to be there to see what was happening. You needed to understand the personalities of those people. Mr. Parsnick is a control person. Let's put it that way, politely. Who related the concern? Your Honor, you're acting as if I didn't speak. I I'm just asking you a question. We both spoke. We both spoke in that meeting. We both spoke. And I asked for the investigation. The district attorney said she would refer it over to the attorney general's office. And to keep a lid on it. So then at some point, did you follow up with the district attorney? Well, I did follow up with the district attorney, Judge. I was told to keep a lid on it. I did. However, I understand. Well, I saw Mr. Parsnick go to the solicitor. Immediately after the meeting with the district attorney, Mr. Parsnick went to the solicitor. I showed up in the room and the solicitor was surprised. It's in my deposition. That's a part of the record in this case. The solicitor was surprised that I took this to the district attorney. Not in favor. Also went to the county manager. In June, several months after, two months after this occurred, I had the opportunity, the district attorney, contrary to what the court said, I did not have access to the district attorney on a daily basis. The district attorney was not accessible to me. I did not engage in chat and banter with the district attorney. The second time I saw the district attorney was when she had an employee problem. What was your motivation in going to the district attorney? Because I'm a victim of a crime, Your Honor. I was reporting what happened to me. A felony happened to me. The only one that took that seriously was me. I wanted justice as a victim. Also, the person who did this crime was an employee of the district attorney's office. She wasn't even removed. She wasn't even suspended. She was not even investigated. She was allowed to act in the district attorney's office as an employee, and everyone agreed that it was done by a wiretap. That's why I went. It was something that everybody should be aware of, Your Honor. Citizens should be aware of it. I expected, like they said, an investigation would take place. This was not the first time a wiretap violation had been committed in that county. These same individuals took the other wiretap violations seriously, had that person removed. This one, however, nothing like that happened. This is the type of speech, Your Honor. I am not a person that was compelled like one of the other court cases, the DeSantis. The Garcetti case. The Garcetti case. Well, Garcetti was not compelled. It's the person who had the subpoena. DeSantis. He was compelled to come forward. Okay. This is not compelled testimony. This is voluntary testimony. I jeopardized my employment. I jeopardized my career as an attorney. I jeopardized my professional career as an HR individual, and I brought that because I thought it was something that the county would take attention to, given the fact they had the history of the Kids for Cash scandal in that county. Can we hear from Mr. Francis? Yes. Great. Thank you. Mr. Francis, it looks like I have a little bit more time here. No, the red light suggests that your time's up. Okay. I'll concede to Mr. Francis. Okay. Thank you. Good afternoon, Mr. Francis. Thank you, Your Honor. May it please the Court. The ACLU of Pennsylvania thanks you for this opportunity to speak to you this afternoon. I'd like to talk just to make points with regard to the two First Amendment issues that are being raised here. One was Ms. Javits speaking as a citizen when she made her complaints and followed up on after she made her initial complaint. And second was the matter that she was talking about should it be considered a matter of public concern. When you go to the first point, our major contention on the citizen point is that there is an evidence in the record that shows that Ms. Javits was actually speaking in her official capacity when she made the complaints and when she followed up. The trial court relied on two pieces of evidence, essentially. One, an ethics policy that, quote-unquote, encouraged employees to come forward generally to complain about malfeasance or wrongdoing that they saw in the course of their work. And the second thing that the court depended on was what I'm going to refer to as a kind of proximity argument that she wouldn't have been able to go to the DA and make this report if she wasn't working officially. And I guess the answer I have to that is twofold. One is when you look at the cases in this circuit especially, when someone has been found to be working in their official capacity rather than speaking as a citizen, there's usually some substantial piece of positive evidence that shows that this person was acting in their official capacity. Whether that evidence is an admission that, yes, I was acting within my official duties when I made this complaint, or the evidence is a policy or a job statement, a job description that shows that they were covered by the duties, or even evidence of a long-standing or well-ingrained practice, like in the San Diego case. There's something in the record that shows that this was part of the person's official duty. That evidence isn't here. There's none of that kind of evidence in this record. And even the county really doesn't make that assertion separate. So absent, what's important about there being a policy in the record is that it shows, it's a guideline, it's the post that in order to establish that the person is acting in basically in the ordinary course of their duty. If you agree that at least in the record, you weren't there, Mrs. Davis was, at least in the record, she was there at the meeting where her conversation was allegedly recorded, and it's assumed that it was recorded. Yes, Your Honor. She was there in her position as Director of Human Resources. You mean during the time when she was allegedly recorded? Yes, Your Honor, I would agree that she was there in her official job. And she went with Mr. Forsnack to visit the DA. She was there in her official capacity as Human Resources Director. Actually, there I don't agree. I think that the whole reason Why not? She didn't have a private meeting with the DA. She wasn't there to file a private complaint. She was complaining about this document that was filed with the Pennsylvania Labor Relations Board as an unfair labor practice. Is that part of her official capacity? I guess I have two answers, Your Honor. One is there's an argument, I think, that if somebody complains about a crime, to some extent, they're always acting as a citizen. They're always what? Acting as a citizen. They're saying, look, there's criminal behavior. Every citizen has the responsibility to testify truly. The same way you would say somebody has an independent testimony, has an independent as this court said in Riley, that if somebody is called, even though the workmate, what they're testifying about might be part of their official duties, when they get on that witness stand, they still have the responsibility to testify truthfully as a citizen. And that's part of what we've argued in our brief. Reporting a crime is of the same species. It's also not part of her job description, right? I mean, this is reporting crimes is not part of her job description. And that's the point I was going to get to next, Judge Reschrepo. She's not an inspector. She's not an auditor. It's not part of her job to go out and look for wrongdoing, crimes and unethical. But she was complaining about the complaint that was filed before the state labor relations work, which was part of her job. But she was complaining because a crime had been committed in the course of those duties. Still in the course of the duties. In the course of what she was doing duties. But a crime was an exceptional event. And it wasn't within the ordinary... So any time a public employee talks about something that another public employee did in the course of their duties, if it may have been a crime, that makes it a private complaint? Is that what you're saying? A private complaint? Or a complaint as a citizen? A private complaint by a citizen? I would say yes. I would say if... Does it matter if that person is the victim of the crime? What if someone else was the victim and the reporter was just an observer? Well, in this instance, Your Honor, anybody in the Pennsylvania's wiretapping law, where were two consents made in Pennsylvania, that means that anybody in the room who didn't consent to having their conversation taped was a victim of the crime. It really wasn't just Ms. Jett. It would have been anybody who didn't consent to having... But does it matter that she was the victim of this crime? What matters is that she was a state employee who saw what happened. And she decided not to sit on it and to be quiet, but to report it and to do something about it. So do you make any distinction? Let's assume she went to that meeting, she got beat up. She got beat up and then she went to the DA's office and said, hey, I just got beat up. Is there any distinction between that and the crime that was committed? I think any crime has a public aspect to it. That's the reason we punish crime. We don't punish crime because it's tortious. We punish crime because a crime is a crime against the people. Against the commonwealth. And so any crime that you report has a public component. But in this case, and I think it's important, I think to some extent that the district court opinion minimizes the impact of the particular crime that was alleged to make it personal. You invade people's privacy when you don't get their consent to take them. It's an important thing. Can you imagine what state government would be like if basically government officials had to worry about whether or not they were going to be able to destroy the give and take that makes union negotiations possible? So there's an independent reason, an important reason that's related directly to the functioning of government that makes this an important thing and makes it important as a citizen to carry out, to talk about and to protect citizens when they come forward, even if they are government employees as well. Some of the cases, I think DeRitus, among them, say that if the person's just reporting a personal grievance, if they're just complaining about a personal grievance, that's not public. How do you take that proposition out of this reporting of a crime? That gets to whether or not this was an issue of public concern question. And I guess I have two responses to that. One is you can have some personal involvement, there could be some personal motivation and still have a question be a matter of public concern. This circuit's cases say that. In fact, the cases that we cite in our briefs say it. And DeRitus, which would be my second point, what's important about the DeRitus case is that Judge Krauss in that opinion didn't just say that motive was irrelevant. What Judge Krauss said was look, there's a place to consider whether or not motive should bear on the public concern question. And that place is in the Pickering Balancing Test that goes on in the third part of the test. It's not in determining whether or not it's an issue of public concern. You can look at it that way, but it's not going to be dispositive. And that's in the Zero case. But DeRitus comes right out and says, the majority opinion of DeRitus says, look, the place to think about this motivation stuff is in the Pickering Balancing. And that's where it ought to be used. I see that my time's up. Thank you, sir. Mr. Bufalino, how are you, sir? Good, Your Honor. How are you? Good. May it please the Court, Ms. Javits' report of this alleged, and I underscore the word alleged because that's exactly what the evidentiary record bears out, that it was merely just her suspicion of a wiretapping event, was not as a citizen. It was in the course of her resources director for Luzerne County. As we know from the Garcetti v. Sobolos and progeny, looking at a person's job description really just doesn't cut it. They've told us that it has to be a practical inquiry. And I really think the word practical needs to be underscored because it's really about what happens in the practical reality of performing the daily functions that a public employee does. And in particular... But if you're a public employee and you think you've been victimized, whether you were assaulted or whether you were illegally taped, and you report that to the authorities, you're suggesting that you're not reporting as a private citizen? It's part of your job duty to report the fact that, hey, I got beat up or I got taped? I'm saying what I think that this Court and the United States Supreme Court has said, which is that it's a factual... It depends on the facts of the case. It really turns on the facts of each case. And on this case, she is the human resources director for the entire county. The very first words that Ms. Javis told Your Honors when she stood up here was that her job was to investigate employee misconduct as part of her duties. That was the very first thing she told you. Sure, but then if a crime is committed against her in the course of her duties and she reports that to the authorities, where is that in the job description? Well, number one, again, it's not in the job description, and we shouldn't be confined by the written job description because, as the courts have said, oftentimes the duties are more expansive than what's contained in the written paperwork. It's not in the scope of her duties to report crimes against her person. To report crimes against her person. But it is part of her duties. Well, it may be for two reasons. Number one, it is part of her job to report employee misconduct, particularly when it's committed in her presence. Number two is, although Ms. Javis and the ACLU wants to sort of slough over the ethics code that was in place at the time that she was offered this job, the ethics code does exactly what Garcetti v. Sabalas said it should do. In fact, the court there said that if a county is concerned about the very issues that are at issue in this case, or similar ones, it has the internal option of establishing policies that afford the employees the opportunity to do exactly what the loser in county policy did, which was come and tell us. And to say that that wasn't part of her duties, it's part of every county employee's duties. And because it doesn't use the word require, and it only uses the word encourage, it goes back to the practical inquiry. If we're going to force county governments to draft these policies with the complexity and the nicety that we might do, having sat down in hindsight and writing our briefs or things like that, that's really not what happens on a practical day-to-day. The bottom line here is the practical reality is that the county said, if you see a crime, a violation of the law, all county employees, you are encouraged to come and tell us. If we follow that ethics policy argument, then no county employee who wanted to report an alleged misconduct would ever be able to speak as a private citizen, right? Because they would always be covered by that umbrella ethics policy. If it were a crime that occurred as part of their duties? I'm not sure I follow your other question. If they had a complaint about any kind of misconduct, ethical, criminal, whatever, and they wanted to report it, they would never be able to do so as a private citizen if we follow your argument about the ethics policy. Well, I'm not sure that's entirely true, Your Honor, depending on, again, upon the facts of the particular case. In other words, if wouldn't the county always say, that complaint was, they had to do that anyway. The ethics policy requires them to. I can't think of a situation where a county wouldn't be able to retort that that was covered by the ethics policy. But that's why in addition to the ethics policy, when you look at her particular role as the human resources director, the person that is almost, I won't say singularly in charge, but certainly primarily in charge of employee misconduct, then she takes the complaint and as I think Judge Fischer sort of intuited, she didn't just walk up to the DA's office. The very first person that she goes to talk to is Mr. Parsnick, and he supports her decision to go up and schedule a meeting with the DA's office. And contrary to Ms. Javits' recollection of what the record bears out, my recollection of what the record bears out is that Mr. Pedry, the county solicitor at the time, was equally as supportive. But regardless of whether or not she received the support of her superiors, the bottom line here is that, and this court has said it, the audience to whom she makes the speech to becomes irrelevant. She goes to her immediate supervisor to say, hey, listen, in the course of me performing my duties, I think I've been walked out. And I think this is a matter that should go to the district attorney's office. And they say, okay. None of that, now in hindsight, knowing what the standards are, there isn't one shred of evidence in the evidentiary record to say that she was making this report as a citizen because she felt like what she told your honors this afternoon was that she was a victim. What about subsequent there, too, when she made the independent inquiry? I was just about to address that, your honor, so thank you. Everything was about I, I, I. I'm interested in what's happening here. I'm interested. Not we need to make sure that this person is, for the betterment of the public or the betterment of the county is brought to justice. It was about I'm a victim of a crime. Yeah, but most victims of crimes approach the authorities saying what happened to my case? Yes, sir. So how is this any different? Well, that really goes more to the public concern aspect of it in terms of whether or not this is a matter for inquiries or whether the report of the crime is a matter or the crime itself is a matter of public concern. And I think when you look at when you look at the cases that talk about matters that are private or public concerns, they really involve they really go back to what Connick v. Myers had said was really the premise, which was essentially does it involve a public does it involve a matter that affects really the public interest or the public official's performance of their duties? Those are all the types of cases where you see that they are declared to be matters. Was this union rep from the DA's office a public official or a public employee? I think she's simply a public employee. Does that make a difference? I think it does. When you look at when you look at the Connick case, which really is one of the seminal cases, the court there said it's a matter of public concern where one exercising public authority would be relevant to the electors, the public electors, in evaluating that public official's performance. If we were to ascribe public concern to every employee dispute, we would be doing the complete antithesis of what our this Court's decisions and the United States Supreme Court's decisions have cautioned, which would be constitutionalizing employee grievances. This is a crime. This wasn't an employee. It's more than just an employee grievance. This was a crime. It was a felony under Pennsylvania law. Actually, Your Honor, the facts of record show that really it never happened. That was all Ms. Javits's wild speculation. Just like in the Parsons case, which we cite in our brief, all of her suppositions about being tape recorded, I asked her. I was at the deposition, and I specifically asked her, do you ever see the phone on? No. The phone was upside down. Yes. Do you have any evidence to show that the recording function of that phone was activated? She danced around that a couple times, but I think a very clean and honest reading of that transcript would be there's no evidence, and that's exactly why no charges were filed. The District Attorney, because the subject of the crime or the alleged perpetrator of the crime was an employee of her office, did the appropriate thing. She referred it out to the Pennsylvania Attorney General's office. But then there was, the record shows there was no referral. I thought the record showed from a discussion that Lawton had with somebody that the DA decided not to do that. That was, again, in my recollection of the record, Your Honor, having lived this case for all, that was, again... Did the DA tell Ms. Davis in that subsequent inquiry, we never sent it to the AG? I think she said just the opposite of that. In fact, she presented an affidavit at the time of summary judgment saying that at no point did she ever say did Mr. Lawton ever come to her to try to squash the investigation that she sent it up. And then ultimately, I believe that Ms. Davis, somebody from the Attorney General's office approached Ms. Davis and basically told her there's nothing to go on. There was no evidence of any recording device. All there were were notes. I want to go back for a minute to the question about whether the person who allegedly made the recording was a public official or a public employee. I think the county in its brief, or maybe it was in one of its other papers in the record, made a point of saying that that person wasn't even at the meeting in her capacity as a public employee or official, but rather as the union rep. Is that relevant? I don't think it is. I think it's really more what's Ms. Davis' capacity, or the particular plaintiff, or the speech maker for lack of a better term. I really think that's the more relevant consideration. It's not when any of the cases that have talked about the perpetrations of crimes and things of that nature, I'm not sure the focus is really on who the perpetrator is. It's really more on the impact at least as far as the public concern aspect of it is. How does it impact the public? I'm thinking more of how it might affect her thinking about the situation. If it's a public employee on the other side of the table, she might be thinking I want to report this because it shows government misconduct. If it's a union representative, you don't have that connection. In this particular case, she was both. She was an employee of the district attorney's office and happened to be the existing president of the AFSCME union. I'm not sure that answers your Honor's question, but that's what happened. Let's assume she got beat up there instead of recorded. She goes and reports that crime to the authorities. I just got beat up at the union meeting by people on the other side of the argument. Physically beat up? Yeah, physically beat up. Assaulted. She reports that. Is she now reporting that as a private citizen or as a public official? Is it in the course of her employment to go report that she was beat up? Yes, I think it is. That's a wrongdoing committed. It's just like as if it didn't involve her. That goes back to Judge Porter's questions about how every time anybody is an employee of the county and they report a crime, the county is going to waive the First Amendment flag. No, I'm not speaking to I didn't mean to speak to what happens for every other county employee. As far as this case goes, the factual context that must be considered, she's the HR director. It would be just the same as if somebody had come to her as the attorney and said, Jane Doe beat me up, or John Doe beat me up. But let's assume Sally is assaulted by her boss and reports that to her boss, and then the county is going to take the position well, you had an ethical obligation to report that, so you have no First Amendment protection. No, I don't think that you can go that far with it.  Every time you report a crime, you're doing it as a citizen. If that were the case, again, this is not courtroom testimony and I think as we point out in our brief, those cases are limited courtroom testimony. I know of no case that says what my esteemed colleague has said that the rule of law is that, or the rule of this court has been that if there's a crime that's been committed, you're obligated. Every time you report a crime, you're doing it as a citizen. I know of no such case. I understand your position, every time you report a crime, you're doing it under the ethics code so therefore you're a public employee. That's what you just told us. Yes, sir. As far as this ethics code is concerned, yes. Right, so again, that goes back to Judge Porter's questions. So if Susie's assaulted by John at work and then she reports that crime she's obligated to under the ethics code. Yes, sir. So she would be doing that in her capacity as a public servant, a public employee. That would be no different than the other cases which have found that there was an ethical duty to report the wrongdoing or that there was an ethical duty to make the reports or blow the whistle. There's a whole host of cases there and that would hold true not just for those particular plaintiffs but for all of those employees that hold those particular positions. Let's talk for a minute about whether it should matter whether the allegation of criminal activity was in fact founded. You've said there was nothing to it. There never was. Correct. It was never proven. Correct. Let's assume a situation where an employee really does make something up. They made it up. It's fake. It's not fake news, but it's a fake report. And it causes trouble within the organization and they get fired as a result. Can they say, ah, that's retaliation. I was reporting a crime. That's exactly the type of thing that I think the courts sort of intuitively have been worried about. That would enable any employee just to simply pigeonhole their complaint under the rubric of citizenry speech to fabricate a scenario much like Your Honor just posited. Maybe it wasn't fabricated. Maybe it was earnest but mistaken. Does that make a difference? I think it makes a big difference, particularly in the public concern context because what's the public's interest in honest, albeit mistaken, reports of crimes? I'm not sure that there's any real benefit to the public on that. Thank you. Thank you, Your Honor. Your Honors, there's been a lot of discussion of the Ethics Code. It's unfortunate, however, that the Ethics Code in its entirety, or even part of it, never made it to the reproduced record in this case. I took the deposition of Robert Lawton, which is right here. The Ethics Code in its entirety is attached as an exhibit. However, in the motion for summary judgment, Mr. Bufalino only put on the record the give and take, the answers and questions. There are no exhibits that are part of the lower court record, and then again, it was moved up without the exhibits. If you had the opportunity to look at the Ethics Code in its entirety, you would see that you're encouraged to report what you think to be as a violation of the law to the Ethics Commission. Not to the district attorney, not to any police, to the Ethics Commission. I think he stood here and told you, and so did the lower court probably on his pushing forward that I was obligated to report what I thought to be a crime under the Ethics Commission. It doesn't even use the words, you are obligated to do it because you would move it to a duty and then no one would have a duty, no one would have First Amendment protection because all 1,400 employees would be obligated under that Ethics Code to move it forward. I agree with you, Judge. Pick up on my last question to Mr. Bufalino. Let's say for the sake of argument that you were mistaken and the person on the other side was not recording that conversation. Should that make a difference? No, it shouldn't. Because in good faith, I put forward an allegation to the district attorney. I'm not somebody off the street. I knew what I saw. I presented her evidence, not just my testimony. I presented her evidence, which you again have been denied the opportunity to see because it's not a part of the record in this case. However, if you had, you would see that that type of evidence, and if you look at the wiretap case law, you would see that that type of evidence is good enough. I make the complaint. They deny it. What's your evidence? I have the transcripts of the testimony pages and pages and pages of typewritten conversation that could only have occurred if it was wiretapped. Also, you go back and you look at my deposition, which is part of this record, and it begins at page 71. He tried to con me into admitting that it was Mr. Parsnick, my boss, who was bringing the allegation forward to the district attorney. It was not. I corrected him. It was me that brought it forward. Also, in that deposition, I did not have a smartphone. I did not know how they worked. I did not know it was activated. I wouldn't know. How would I know? How would I know? No one ever asked to be tape recorded. Could we tape record you so we could use it in an investigation? It was not against the county, but primarily was against me, to remove me from my job as the HR director. That's why I felt it should go forward, and I would think the district attorney and the county would not want someone in their presence, because they didn't want someone before that had committed a wiretap violation. They took the opportunity before to have this person removed. Why wouldn't they do it this time, especially with an employee of the county that had protection for compelled testimony? I didn't have to go forward and report this. I would think that the community would be appalled if they knew that an employee was being paid on county time to come into a meeting, tape record him, and use it against me, a good employee who was competent and professional, to have me removed from my job. I would think citizens would want that kind of information and knowledge. I'm presenting it. I'm not making the decision. But it was the type of information that the public would want to have. The second thing, when I made the complaint, it was not until two months later that I had the opportunity to meet Stephanie Salvantas, the district attorney, again on an employee complaint. And I said to her, what happened? She said, oh, I'm sorry, Donna, but Robert you met with us. And he told me he did not want it investigated. So she didn't investigate it. It was not investigated at all until after I was terminated. Terminated October of 2015. I was not going to give up the fight yet. I contacted the attorney general myself. They said she never contacted them. I wrote them a letter. And unfortunate again, because this... is a bit beyond the scope of our argument today. Thank you very much. Thank you.